

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
10/09/2019

| | |
|---|---|
| IN RE: § | |
| ALWIN GERALD MORGAN; aka MORGAN § | CASE NO: 19-30004 |
| Debtor(s) § | |
| § | CHAPTER 11 |

## MEMORANDUM OPINION

This matter is before the Court on the Objection to Homestead Exemption filed by Regions Bank (ECF No. 36). A bench trial was held on September 17, 2019. For the following reasons, the objection is sustained. The debtor may not claim 604 Logans Lane, Austin, Texas as his homestead.

## FACTUAL AND PROCEDURAL BACKGROUND

In a bankruptcy case, a debtor may use the federal homestead exemption or elect to use the homestead exemption of his state of domicile. 11 U.S.C. § 522(b). Here, the debtor has elected to have his homestead exemption determined by Texas state law. The time for filing objections to exemptions pursuant to Bankruptcy Rule 4003(b)(1) expires 30 days after the meeting of the creditors. Regions Bank timely filed its objection (ECF No. 36).

Alwin Gerald "Jerry" Morgan (hereinafter "Morgan" or the "debtor") filed his Chapter 11 petition on January 1, 2019. Morgan elected to use Texas exemptions and claimed a homestead exemption in the real property known as 604 Logans Lane, Austin, Texas (hereinafter "Logans Lane" or the "Austin property"). Since 1999, Morgan has owned three tracks of real estate, two of which have been sold.[1] In 1999, he and his former wife, Kimberly Morgan (hereinafter "Kimberly"), purchased real property at 5890 Highway 159 West, Bellville, Texas 77418. It is

---

[1] The debtor sold his prior homestead with his ex-wife pre-petition. His residence at 426 Warner Road was sold post-petition (ECF #66).

undisputed that they lived there as their marital homestead. On March 12, 2015, Morgan filed for divorce. Fifteen days later, he entered into an earnest money contract to purchase real property, a new residence, at 426 Warner Road, Bellville, Texas (hereafter "Warner Road" or the "Bellville property"). However, due to his pending divorce and his spouse's refusal to consent to the purchase, he was unable to finalize the closing. This led to numerous written extensions of the original earnest money contract. Morgan given his inability to close leased the Warner Road property with the intent to close at the end of his lease term, once his divorce was finalized. Morgan entered into the lease on August 1, 2015 and began to reside at the Warner Road property.

On November 17, 2015, the divorce was finalized. The Agreed Decree of Divorce awarded the marital homestead to Morgan in exchange for his payment of 1.2 million dollars to Kimberly. Two days after the divorce was finalized, Morgan sold it. He netted $556,655.18[2] from the sale of the homestead and his former wife received $950,000 as a credit towards the 1.2-million-dollar payment awarded to her in the Divorce Decree.

On May 15, 2016, Morgan married his current wife, Keyla B. Turro (hereinafter "Turro") and shortly thereafter purchased two residential properties. On May 26, 2016, eleven days after they married, he and his new wife purchased the real property at 604 Logans Lane, Austin, Texas. Twenty-two days later, on June 17, 2016, Morgan closed on the property on Warner Road that he had been leasing and living in since August of 2015. Grantor Norman N. Kiecke and Darcy E. Kiecke executed the Warranty Deed with Vendor's Lien on Warner Road with Morgan as Grantee for consideration of cash and a note in the amount of $484,000. On June 17,

---

[2] The sale date was November 19, 2018. The six-month exemption for homestead sales proceeds pursuant to Tex. Prop. Code Ann. 41.001(c) expired on May 18, 2019. Debtor closed on Logans Lane on May 26, 2019, eight days after the six-month Texas homestead exemption for sales proceeds had expired.

2 / 13

2016, Morgan executed the Deed of Trust in favor of JP Morgan Chase Bank, N.A., creating a lien on Warner Road. The Chase Deed of Trust was recorded in the Deed Records for Austin County on June 23, 2016. Under the section titled "Uniform Covenants" in the Chase Deed of Trust, paragraph six, titled "Occupancy," contains the following covenant:

> Borrower shall occupy, establish, and use the Property as Borrower's *principal residence* within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exists which are beyond Borrower's control.

(Emphasis added).

The purchase documents on the Warner Road property (Trial Ex. 12-15) indicate Morgan is unmarried. Additionally, the executed deed of trust (Trial Ex. 15) indicates Morgan intends to use the property as his principle residence. Morgan's representation that he was unmarried was false, but his representation that he would use the property as his principle residence was true as he was living there at the time of closing.[3]

Morgan's wife, Turro, has never lived at Warner Road. However, it was Morgan's primary residence both before and after the purchase of Logans Lane, as evidence by his lease, occupancy and subsequent purchase after his remarriage. Notably, at the time they closed on Logans Lane, Morgan and his wife were living in separate residences; he resided at Warner Road and Turro had been leasing an apartment. Morgan testified at his creditor's meeting that he was separated from his wife.

Morgan specifically testified as follows:

> Ms. McClure: He and his wife are separated, not officially, but kinda

---

[3] Morgan entered into the earnest money contract while single and the contract was never updated after his marriage to Turro. However, his representation and actual use of the property as his residence never changed at any point after he leased and then subsequently purchased the property.

3 / 13

sorta. And she lives in the homestead in Austin. He's living in Bellville.

Q. When did that separation occur?

A. We haven't really been together in two years, primarily because of all these financial issues - -

Q. And so - -

A. - - but we're not - -

Q. - - you're in Bellville - -

A. Yeah.

Q. - - and she's in Austin?

While the Court believes that the debtor has spent some time at the Austin property pre-petition, it has been fleeting at best and occurred after his occupancy then subsequent purchase of the Bellville property. The debtor closed on the Austin property on May 26, 2016, and then went on his honeymoon for ten days. He testified that he moved some office furniture and clothing into the Austin property after he closed, but it was not clear exactly when this occurred, and if it occurred pre or post his closing on the Bellville property.

Further, the debtor has made numerous representations under oath indicating that he never resided at Logans Lane. For instance, the debtor's petition (ECF No. 1) shows the following:

(a) The debtor lived at the Bellville property and not the Austin property on the petition date;

5. Where you live

426 Warner Road
Number    Street

Bellville                             TX        77418
City                                  State    ZIP Code

AUSTIN
County

(b) The debtor had resided in this district over the last 180 days as of the petition date[4];

6. Why you are choosing this district to file for bankruptcy

Check one:

☒ Over the last 180 days before filing this petition, I have lived in this district longer than in any other district.

Likewise, the debtor's Statement of Financial Affairs (ECF No. 14) shows the debtor has never lived at the Austin property:[5]

2. During the last 3 years, have you lived anywhere other than where you live now?

☐ No
☒ Yes. List all of the places you lived in the last 3 years. Do not include where you live now.

| Debtor 1: | Dates Debtor 1 lived there | Debtor 2: | Dates Debtor 2 lived there |
|---|---|---|---|
| | | ☐ Same as Debtor 1 | ☐ Same as Debtor 1 |
| 5890 Highway 159 West (3/1999 - 3/2015)<br>Number   Street | From _____<br>To _____ | _____<br>Number  Street | From _____<br>To _____ |
| Bellville        TX      77418<br>City              State  ZIP Code | | _____<br>City              State   ZIP Code | |

---

[4] The Court notes that the Austin property is in the Western District of Texas and not the Southern District of Texas.
[5] Debtor's case was filed on January 1, 2019. Three years prior includes 2018, 2017, and 2016. The Austin property was purchased on May 26, 2016, hence the debtor represented in his Statement of Financial Affairs he has never lived at Logans Lane.

Additionally, the debtor claimed a homestead exemption for property taxes for the Bellville property in 2017,[6] 2018 and 2019 (Trial Ex. 16) and not the Austin property. Notably, as of the petition date, there was no homestead affidavit or any other document indicating any entitlement to an exemption on the Austin property.

In summary, Morgan and his current spouse do not currently cohabitate and have never cohabitated for more than a few days; they have lived apart substantially more than they have lived together. Therefore, the Court finds the debtor's residence from August 1, 2015 to the petition date was the Bellville property[7] and has never been the Austin property.

## LEGAL ANALYSIS

Regions objects to the debtor's homestead exemption of the Austin property for two reasons: (1) the debtor improperly claims the Austin Property is his homestead, and (2) even if the debtor is entitled to claim the Austin property as his homestead, the homestead exemption is capped at the statutory amount of $160,375 pursuant to 11 U.S.C. § 522(p). The Court granted leave for the debtor to file a brief regarding the objection. The Court sustains Regions Bank's objection on the grounds that the debtor improperly claims the Austin property is his homestead.

Texas homestead rights have constitutional and statutory origins. Tex. Const. art. 16, §§ 50 to 52; Tex. Prop. Code Ann. § 41.001 et seq. The Texas Constitution protects Texas homesteads from most liens, with few specified exceptions. Tex. Const. art. 16, § 50. Given this extensive protection, an owner is not permitted to claim two homesteads. *See O'Neil v. Mack Trucks, Inc.*, 542 S.W.2d 112 (Tex. 1976). The law will only acknowledge one homestead for single adults, *Ramsey v. Davis*, 261 S.W.3d 811 (Tex. App.—Dallas 2008), and one for a family,

---

[6] 2017 would be the first year that the debtor could claim a property tax exemption as his homestead as the Bellville property was purchased on June 17, 2016.

[7] With respect to the Bellville property, the debtor and his spouse post-petition renounced and disclaimed their homestead rights in the Bellville property on August 29, 2019. (Trial Ex. 23). However, the Court notes for the reasons stated herein the Belleville property was not the debtors homestead.

*Drake Interiors, L.L.C. v. Thomas*, 433 S.W.3d 841 (Tex. App.—Houston [14th Dist.] 2014).

A Texas homestead claimant must show "both (i) overt acts of homestead usage and (ii) the intention on the part of the owner to claim the land as a homestead." *Kennard v. MBank Waco (In re Kennard)*, 970 F.2d 1455, 1458 (5th Cir. 1992). Specifically, there must be proof of concurrence of usage of, and intent by the owner to claim, the land as a homestead. *Hankins v. Harris*, 500 S.W.3d 140, 145 (Tex. App.—Houston [1st Dist.] 2016, pet. denied). Mere ownership is insufficient to support a claim of homestead. *In re Liao*, 533 B.R. 584 (Bankr. S.D. Tex. 2016). However, a debtor's prepetition homestead designation is considered *prima facia* evidence of what constitutes a family homestead. *In re Perry*, 345 F.3d 303, 311 (5th Cir. 2003). Courts determine the validity of a debtor's claimed homestead exemption based on the facts and circumstances that existed as of the petition date. *See Lowe v. Sandoval (In re Sandoval)*, 103 F.3d 20 (5th Cir. 1997)

**A. Logans Lane**

The debtor asserts Logans Lane is his homestead, claiming a Texas homestead exemption. He specifically claims it is his marital homestead with Turro. He further argues that although he purchased the Austin property just seven[8] days after the six-month requirement,[9] equitable tolling should apply because lightning struck the home delaying the scheduled closing.[10] The debtor's argument misses the point. The evidence, which includes the debtors own verbal and written statements, indicates the debtor never established a marital homestead

---

[8] The debtor has miscounted and as stated herein eight days elapsed.
[9] 11 U.S.C. § 522(p)(2)(B) provides an exception to the statutory cap of $160,375 for any interest transferred from a debtor's principle residence.
[10] The closing occurred eight days after the six-month homestead exemption for sales proceeds had expired under Texas law and not the seven days as claimed by the debtor. The exemption limitation contained in 11 U.S.C. § 522(p) provides that the limitation does not include any interest transferred from a debtor's previous principle residence acquired prior to the beginning of the 1215-day period, if both residences are in the same state. This expired on May 18, 2019.

with Turro at Logan's Lane. The debtor failed in his burden. Additionally, however, equitably tolling does not apply to 11 U.S.C. § 522(p).[11]

First, the debtor has never used the Austin property as his residence. "Possession and use of land by one who owns it and resides upon it makes it the homestead in law and in fact." *In re Bradley*, 960 F.2d 502, 507 (5th Cir. 1992). This would be true for the debtor as to the Warner Road property but not as to Logans Lane. Warner Road could have been the debtor's homestead, but for the fact that the debtor's wife has never lived in the Warner Road property. Accordingly, it cannot be his marital homestead.

The debtor's overt acts of homestead usage as to Logans Lane are lacking and do not exist. This finding is supported by the admissions in his bankruptcy schedules and his statement of affairs. The Warner Road deed of trust also evidences the debtor's intent and representation that Warner Road was used as the debtor's residence. Further, his homestead claim for tax purposes on Warner Road for the three years prior to his bankruptcy petition, as well as his and his wife's subsequent post-petition renouncement and disclaimer[12] of his homestead claim in Warner Road, all support the conclusion that the Warner Road property and not Logans Lane was his permanent and only residence at all times during his current marriage.

The debtor's testimony at the first meeting of creditors buttresses this finding. There, the debtor testified as follows:

Q. Who lives at the property (Warner Road)?

A. I stay there most of the time. No one else.

When further questioned by Hector Duran, a staff attorney of the United States Trustee, Morgan

---

[11] The debtor does not cite, nor has the Court found, any authority supporting the application of equitable tolling to 11 U.S.C. § 522(p).
[12] The debtor and Turro renounced and disclaimed any homestead any homestead rights on Warner Road in August of 2019 (Trial Ex. 23).

8 / 13

confirmed the accuracy of the representations in his schedules and statement of financial affairs:

> Q. Did you review all the information that's contained in those documents (schedules of statements of assets and liabilities and the statement of financial affairs) before you signed them.
>
> A. Yes.
>
> Q. Did you understand all the information that was being requested of you?
>
> A. Yes. I spent a couple of weeks putting it all together. **It's very thorough**.
>
> Q. All right. And is all the information that's contained in those documents true and correct?
>
> A. Yes.

Therefore, the Court finds the debtor's testimony unreliable and not credible, to the extent it contradicts the sworn statements contained in his bankruptcy schedules, his statement of financial affairs as well as the Warner Road Deed of Trust. The Court makes this finding based on Morgan's signature on the petition,[13] which is then additionally supported and confirmed by his under-oath testimony at his first meeting of creditors.

As to the second prong, "the intention on the part of the owner to claim the land as a homestead," the evidence supports a finding that the Austin property is not the debtor's homestead. The actual use of the property is the "most satisfactory and convincing evidence of intention." As previously stated, the debtor has not actually used the Austin property as his residence or homestead. As of the petition date and all dates after the Logan's Lane purchase,

---

[13] The signature line on the bankruptcy petition includes the following declaration, "I have examined this petition, and I declare under penalty of perjury that the information provided is true and correct." The signature lines on all the other bankruptcy schedules and statements include, in part, "I have read the answers on [name of document] and any attachments, and I declare under penalty of perjury that the answers are true and correct, I understand that making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines of up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519 and 3571."

his residence was the Bellville property. Additionally, given his admissions and his testimony the Court cannot find that he had any intention to claim this property as his homestead.

According to the debtor's testimony at the meeting of the creditors and in his depositions, he resided on the Bellville property prior to and after his bankruptcy filing. The debtor testified that the Bellville property was purchased based on its proximity to his children and his business. The debtor purchased the Bellville property when he was married to Turro and yet declared in the closing documents that he was not married. He further testified that at the time of his bankruptcy filing, he and Turro were not residing together at the Austin property and Turro only resided at Austin property. Still further, the debtor listed the Bellville property on his bankruptcy petition as the location where he lives. Based on the debtor's admissions in his petition, schedules, statement of financial affairs and his first meeting of creditors testimony, the debtor should be precluded from making any factual allegations that support a homestead claim on the Austin property.

Even if the Court were to assume that the debtor used the Austin property as his residence on a temporary basis, his actual and permanent use of the Bellville property as his primary residence would lead the Court to hold that he had no intention to claim the Austin property as a homestead.

An occasional use is not enough to constitute a homestead, and the mere fact that a homestead claimant on occasion uses the premises as the place of his home will not impress the property with homestead character. *See Hillard v. Home Builders Supply Co.*, 399 S.W.2d 198, 201 (Tex. Civ. App.—Fort Worth 1966, writ ref'd n.r.e.). The most that can be said is that the debtor has sought to claim a homestead exemption on the Austin property to protect the sizable equity in the property from his creditors. However, seeking to exempt the equity in his non-

exempt real property by making an improper homestead exemption claim does not equate to the intent required by the second prong of *Kennard*.

Moreover, it appears the debtor failed to establish any prepetition homestead, let alone establish the Austin property as his homestead. According to the debtor's testimony at the meeting of the creditors, he resided on Warner Road before and after his bankruptcy filing. In *Tremaine v. Showalter*, the Court of Civil Appeals of Texas, Corpus Christi found that a married, yet separated, man could not establish a new homestead separate from that of his wife because he was not single nor establishing a family homestead. *Tremaine v. Showalter*, 613 S.W.2d 35 (Tex. Civ. App.—Corpus Christi 1981, no writ). Pursuant to Fifth Circuit precedent, contingent future plans are not sufficient to establish an intention to claim the property as a homestead. For instance, in *In re Claflin*, the Fifth Circuit held that a debtor could not claim property she owned in Houston as her homestead because her plan to relocate to Houston was premised upon a contingent factor of not establishing herself professionally in Austin. *Hillock Homes, Inc. v. Claflin (In re Claflin)*, 761 F.2d 1088 (5th Cir. 1985).

Here, the debtor cannot establish either the Austin property or the Bellville property as his homestead. To establish a homestead, the debtor must show that as of the Petition Date, he and Turro either (1) resided on the same property for the purpose of establishing a homestead or (2) intended to make a single property their homestead, which must be evidenced by overt acts. He has done neither.

First, Morgan and Turro have not and currently do not reside on the same property for the intent of establishing a homestead. For the three years prior to, and at the time of the bankruptcy filing, Morgan resided at the Bellville property. He did not reside at the Austin property. In contrast, Turro has resided only at the Austin property. Accordingly, for the duration of their

marriage, Morgan and Turro have not resided at either the Austin property or Bellville property together.

Second, Morgan failed to show any intent to make the Austin property his homestead. This is also true as of the petition date. In fact, in 2017, 2018 and 2019 Morgan claimed a property tax homestead exemption on the Bellville property. Further, in the Chase deed of trust, Morgan covenanted that the Bellville property was his primary residence. Morgan's intentions and statements at the meeting of creditors indicate that the Bellville property was his principal and permanent residence.  Additionally, at all relevant times, Morgan has indicated that Turro resides in Austin, never indicating that it was Turro's intention to make the Bellville property her homestead. Thus, as of the petition date, neither Morgan nor Turro intended to make either property their united homestead. A wife cannot have one homestead and the husband another. *Crowder v. Union Nat'l Bank of Houston*, 261 S.W. 375, 377 (Tex. 1924).

At most, the debtor exhibited a contingent future hope that he may resolve his financial troubles, reconcile with Turro, and then move into the Austin property.  However, this does not establish the requisite intent for a homestead exemption claim.

## CONCLUSION

Accordingly, the debtor and Turro did not and have not established a family homestead. Specifically, the debtor has failed to show an intention supported by overt acts to establish either the Logans Lane or Warner Road as the family homestead.  As previously stated, the debtor has failed in his burden of proof.  Thus, Morgan is unable to establish a family homestead as of the date of the petition, which renders his designated homestead exemption in the Austin property invalid.

**THEREFORE, IT IS ORDERED** that the Objection to Homestead Exemption filed by Regions Bank (ECF No. 36) is sustained. The debtor's current homestead exemption is disallowed. The debtor may not claim 604 Logans Lane, Austin, Texas or 426 Warner Road, Bellville, Texas as his homestead. The debtor shall amend his homestead exemption within 14 days in conformity with this order.

SIGNED: 10/09/2019.

_____
Jeffrey P. Norman
United States Bankruptcy Judge